UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 07-120-GWU


NANCY M. WILLIAMS,                                              PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to

1

07-120  Williams

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-120  Williams

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

6

such cases, the agency may be required to consult a vocational specialist.  <u>Damron</u> <u>v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of</u> <u>Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Nancy M. Williams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning and a syncopal/seizure disorder.  (Tr. 18, 21).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Williams retained the residual functional capacity to perform her past relevant work as a housekeeper, and therefore was not entitled to benefits.  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, "limited" education but a second grade reading level, and history of unskilled work experience could perform any jobs if she had no exertional limitations, but was restricted to the performance of simple tasks in a task-oriented setting with only casual or infrequent interaction with coworkers or supervisors and was precluded from work involving heights, dangerous machinery, and driving.  (Tr.

230).  The VE responded that with these restrictions, the plaintiff could perform her past work as a housekeeper as it was described in the <u>Dictionary of Occupational Titles</u> (DOT).  (Id.).  In the alternative, the VE stated that there were other jobs the plaintiff could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 230-1).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff described several problems that prevented her from working. They included a seizure disorder, which had been present for many years without treatment until she had recently been restarted on the medication Tegretol (Tr. 219). She had a seizure most recently one month ago.  (Tr. 220).  Her right wrist was painful because of tendinitis, and she had undergone surgery in 1997, but still had sharp pains, could not hold anything, and could not close her hand into a fist or pick up a coin.  (Tr. 210, 216-18).  She had suffered from bronchial asthma since birth (Tr. 224) and was placed on an inhaler recently because she could hardly breathe, but she continued to smoke cigarettes (Tr. 218-19).  She had stopped her most recent job in 2002 in order to move to Kentucky to take care of her mother-in-law, and admitted that she had been able to perform some of her past work just using her left hand.  (Tr. 215-16).  She had also applied for a fast food job approximately 18 months earlier, and after her alleged onset date, but was not hired.  (Tr. 215).

8

07-120  Williams

Medical evidence in the transcript is limited.[1]

Dr. Mark Burns performed a consultative examination of the plaintiff on February 13, 2004, noting the plaintiff's complaints of a seizure disorder, asthma, and damage to the right hand. (Tr. 100). He apparently had no records to review, although the plaintiff alleged that she had had a CT scan, EEG, and sleep studies to evaluate her complaints of seizure. (Id.). She also stated that she had undergone surgery in 1998 of the right wrist after a nerve conduction velocity (NCV) test was positive for carpal tunnel syndrome. (Tr. 101). However, she did not improve. She was presently on no medications for asthma, and smoked one pack of cigarettes a day. (Id.). The examination conducted by Dr. Burns was reportedly normal, including finger/thumb range of motion, extension and opposition of all the fingers and normal gross manipulation and grip strength. (Tr. 102). Dr. Burns opined that there would be essentially no restrictions in her ability to perform physical activities, but since there was no evidence of testing for seizures, recommended a thorough work-up by a neurologist to determine if she could

---

[1]The plaintiff does not challenge the mental factors found by the ALJ, which were based on an examination by Psychologist Phil Pack in February, 2004. (Tr. 94). Mr. Pack found a full scale IQ score of 72 and a second grade reading ability. (Tr. 97-8). He diagnosed only borderline intellectual functioning, and opined that Mrs. Williams would have at least a "limited but satisfactory" ability to understand, retain, and follow instructions, and would have a "more than satisfactory" ability to make other work-related adjustments. (Tr. 98-9). A state agency psychologist who reviewed the evidence, Dr. Ilze Sillers, concluded that the plaintiff would have a "moderately limited" ability to understand, remember and carry out detailed instructions (Tr. 143-4).

07-120  Williams

perform activities safely.  (Tr. 104).  A pulmonary function test is attached to the Burns report but the plaintiff was said to give poor cooperation and effort. (Tr. 105).

Subsequently, a one page letter from Dr. Susan Colton was submitted, indicating that Mrs. Williams was a new patient and Dr. Colton had not yet seen records from other providers, without which she could not provide a detailed evaluation of what Mrs. Williams could do. (Tr. 153).  She listed the plaintiff's major problems as tobacco use disorder, a seizure disorder, asthma, and bilateral arm pain and gave her current medications as Tegretol and a Combivent inhaler.  (Id.). Dr. Colton commented that Mrs. Williams could not drive as long as she had any seizures at all, or work around dangerous machinery or heights, felt that asthma would limit her exposure to dust, fumes, and temperatures extremes, and suspected that she would have some limitation in the use of her upper extremities.

Despite the lack of objective evidence for seizures, the ALJ did preclude the plaintiff from working around heights, dangerous machinery, and driving.  He rejected any limitation on the use of the upper extremities or restrictions related to asthma because of the testing conducted by Dr. Burns.  (Tr. 20).

After the negative ALJ decision, the plaintiff obtained additional evidence which was submitted to the Appeals Council.  The new evidence consists of medical records from 1997 and 1998 reflecting decompression surgery for what was diagnosed as deQuervain's tendinitis.  (Tr. 178-9).  Following the surgery, the

10

physician noted a significant decrease in discomfort, and released the plaintiff to "light duty" for approximately a week and "full duty as she can tolerate" (Tr. 178). Several months later, Mrs. Williams complained of numbness, tingling, and occasionally pain, for which an injection was provided along with a splint. (Tr. 177). Her condition was noted to be improved, but there are no notes after December 18, 1998. (Tr. 175-6).

The plaintiff asserts on appeal that the evaluation of Dr. Burns did not provide a sufficient basis to reject her description of restrictions in her right, dominant hand.  The plaintiff notes that Dr. Burns had no prior records to review, and also claimed that Dr. Burns manually forced her hand into a fist during the examination.  (Tr. 217).  Nor does Dr. Burns's report state that he saw any signs of prior surgery on the right wrist, suggesting a "cursory examination."  However, it is the plaintiff's responsibility to prove her own case.  The report from her current physician, Dr. Colton, did not provide any definite restrictions, and listed no actual findings regarding the use of her right hand and/or wrist.  Under the circumstances, a reasonable fact finder could have concluded that the plaintiff had failed to show a medical basis for her alleged restrictions.

The plaintiff also requests a remand for the consideration of the additional evidence submitted to the Appeals Council.  Generally, a remand under Sentence Six of 42 US.C. Section 405(g) can be granted only where the evidence is both new

11

07-120  Williams

and  material,  and  good  cause  exists  for  failing  to  submit  it  earlier.  <u>Cline v.
Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996).  In the present
case, the plaintiff has advanced no good cause for failing to obtain the evidence in
time for it to be considered by the ALJ.  Moreover, the evidence is of very limited
materiality.  It does establish that the plaintiff had surgery on her right wrist, but it
contains no permanent functional restrictions, and covers a period almost four years
before the plaintiff's alleged onset date of August 15, 2002.  (Tr. 45).  Therefore, it
is difficult to see how the additional evidence could change the outcome of the case.

The decision will be affirmed.

This the 23rd day of January, 2008.



Signed By:

**G. Wix Unthank**

**United States Senior Judge**

12